UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CYNTHIA LOUISE BODOH,

                  Plaintiff,

v.                                                                   Case No. 5:14-CV-1004 (GTS)

CAROLYN W. COLVIN,
Commissioner of Social Security,

                  Defendant.
_____

APPEARANCES:                                       OF COUNSEL:

BINDER LAW FIRM                           CHARLES E. BINDER, ESQ.
 Counsel for Plaintiff
60 East 42nd St., Ste. 520
New York, NY 10165

U.S. SOCIAL SECURITY ADMIN.           SERGEI ADEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Cynthia Louis Bodoh ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 9, 10.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on June 29, 1965. (T. 184.) She completed high school. (T. 188.) Generally, Plaintiff's alleged disability consists of carpal tunnel syndrome ("CTS"), back impairment, mitral valve prolapse, neuropathy, and radiculopathy. (T. 187.) Her alleged disability onset date is November 1, 2006. (T. 184.) Her date last insured is June 30, 2011. (*Id.*) She previously worked as an assembly line worker. (T. 188.)

### B. Procedural History

On February 22, 2011, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 184.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On August 16, 2012, Plaintiff appeared before the ALJ, F. Patrick Flanagan. (T. 39-83.) On October 12, 2012, ALJ Flanagan issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 25-38.) On June 13, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 6-11.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 30-38.) First, the ALJ found that Plaintiff met the insured status requirements through June 30, 2011 and Plaintiff had not engaged in substantial gainful activity since November 1, 2006. (T. 30.) Second, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease ("DDD") of the cervical, thoracic, and

lumbar spine. (*Id.*) The ALJ determined that Plaintiff's CTS, left shoulder pain, mitral valve prolapse, status post 2008 bladder lift, multiple chemical sensitivities, sinus allergies, upper respiratory infections, and tobacco use disorder were non-severe impairments. (T. 31.) Third, the ALJ found that Plaintiff did not have an impairment, or combination of impairments, that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 32.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform, "light work . . . the [Plaintiff] was limited to frequent use of her symptomatic and non-dominant left arm for pushing, pulling, and overhead reaching." (T. 32-33.)[1] Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 37.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes two separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to properly weigh the medical evidence. (Dkt. No. 9 at 11-17 [Pl.'s Mem. of Law].) Second, and lastly, Plaintiff argues the ALJ failed to properly evaluate her credibility. (*Id.* at 17-21.)

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

**B.	Defendant's Arguments**

In response, Defendant makes two arguments. First, Defendant argues the ALJ properly weighed the opinion evidence. (Dkt. No. 10 at 8-15 [Def.'s Mem. of Law].) Second, and lastly, Defendant argues the ALJ properly weighed Plaintiff's allegations. (*Id.* at 15-20.)

## III.	RELEVANT LEGAL STANDARD

**A.	Standard of Review**

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which

5

is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the ALJ Properly Evaluated Medical Opinion Evidence.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 10 at 8-15 [Pl.'s/Def.'s Mem. of Law].) The Court adds the following analysis.

Plaintiff alleges that the ALJ erred in affording the retrospective opinion of Richard Zogby, M.D., "little weight." (Dkt. No. 9 at 11-13 [Pl.s Mem. of Law].) Specifically, Plaintiff argues Dr. Zogby's retrospective opinion was binding on the ALJ absent contradicting medical evidence or overwhelming compelling non-medical evidence. (Dkt. No. 9 at 12-23 [Pl.'s Mem. of Law].)

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling

weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 404.1527(c)(2). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.* see also SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Dr. Zogby did not begin treating Plaintiff until September of 2011, after her date last insured. (T. 471.) Dr. Zogby may be considered Plaintiff's treating physician during the period of time he provided treatment; however, if a treating physician did not treat a plaintiff during the time period covered in the retrospective opinion, the physician cannot be classified a treating physician during the relevant period, and therefore the opinion cannot be entitled to controlling weight. *See Monette v. Atrue*, 269 F.App'x 109, 112 (2d Cir. 2008); *Arnone v. Bowen*, 882 F.2d 34, 41 (2d Cir. 1989).

If the opining treating physician was not a treating physician at the time period covered in the retrospective opinion, the opinion may not be entitled to controlling weight, but the opinion may still be entitled to significant weight. *See Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir. 1981) (holding that although a subsequent treating physician "did not treat the [plaintiff] during the relevant period . . . , his opinion is still entitled to significant weight"). However, the Commissioner need not afford significant weight to an opinion if there is substantial medical and non-medical evidence directly contradicting the retrospective opinion. *Campbell v. Astrue*, 596 F.Supp.2d 446, 452-53 (D.Conn. 2009).

Dr. Zogby completed a multiple impairment questionnaire and narrative report in June of 2012, a year after Plaintiff's date last insured. (T. 471-482.) Regarding Plaintiff's exertional limits, he opined she could occasionally lift and carry zero to ten pounds and never lift and carry more than ten pounds. (T. 474.) Dr. Zogby observed that Plaintiff could sit for up to one hour and stand for up to one hour in an eight hour work day and would need to change position every twenty minutes. (T. 473.) Dr. Zogby placed significant limitations on Plaintiff's ability to use her upper extremities. He opined that Plaintiff could not do any overhead work; could not repetitively use her arms or hands; had marked limitations in her ability to grasp and reach; and had moderate limitations in her ability to use her fingers/hands for fine manipulation. (T. 474-75.) Dr. Zogby opined Plaintiff could not push, pull, kneel, bend or stoop. (T. 477.) Dr. Zogby opined that Plaintiff's symptoms and limitations began in 2009. (*Id.*)

Dr. Zogby completed a medical narrative in addition to the multiple impairment questionnaire. (T. 480-482.) Dr. Zogby's medical narrative provided a summary of his examinations of Plaintiff and medical imaging which he used to formulate his opinion. Despite Dr. Zogby's narrative and medical source statement, there was substantial medical and non-medical evidence in the record which contradicted Dr. Zogby's retrospective opinion.

Before Plaintiff's date last insured and during the time in question, Plaintiff was examined by neurologist Johnathan Bratman, M.D., and by consultative examiner Sandra Boehlert, M.D. On February 16, 2011 Plaintiff was referred to Dr. Bratman for a neurological consultation. (T. 561-62.) Dr. Bratman observed that Plaintiff was in no apparent distress during the examination. (T. 561.) Dr. Bratman's neurological

8

examination revealed that Plaintiff had full strength in all muscles groups of the arms and legs, no tremor or other involuntary movements, and normal bulk and tone. (*Id.*) He also observed during his examination that Plaintiff's sensory was intact in all four limbs. (*Id.*) Dr. Bratman noted Plaintiff's gait was wide based, but normal in stride. (T. 562.) He observed that she could get out of a squat position without difficulty and walk on her toes and heels without difficulty. (*Id.*) He observed that her reflexes were intact. (*Id.*)

On April 5, 2011, Dr. Boehlert performed a consultative exam. (T. 373-77.) Her physical examination showed that Plaintiff was in no acute distress, had a normal gait, could walk on heels and toes, could squat, and needed no help getting on and off the exam table. (T. 375.) Dr. Boehlert's exam also revealed that Plaintiff had full flexion, extension and full rotary movement in her cervical spine. (*Id.*) Her exam showed full flexion and extension in her lumbar spine as well as full range of motion in her shoulders, elbows, forearms and wrists. (T. 376.) Dr. Boehlert opined in a medical source statement that Plaintiff had mild limitations in repetitive use of the left arm for pushing, pulling, or overhead reaching. (*Id.*) The medical opinions of Drs. Boehlert and Bratman contradict the limitations imposed by Dr. Zogby; further, Drs. Boehlert and Bratman based their opinions on contemporaneous examinations completed during the time period in question. Therefore, the ALJ did not err in affording the retrospective opinion of Dr. Zogby "little weight" because the opinion was contradicted by other medical opinions in the record and Dr. Zogby was not a treating physician at the time in question.

Plaintiff also alleges the ALJ erred in his analysis of Dr. Zogby's opinion because he relied on Plaintiff's conservative course of treatment and that the opinion appeared to

be based on Plaintiff's subjective complaints. To be sure, it is in error for an ALJ to reject a source's opinion solely because the plaintiff was prescribed conservative treatment. *See Shaw,* 221 F.3d at 134 (ruling that "the district court improperly characterized the fact that [the treating physician] recommended only conservative [treatment] as substantial evidence that plaintiff was not physically disabled during the relevant period").

However, here the ALJ did not reject Dr. Zogby's opinion solely on the basis of a prescription of conservative treatment or because it appeared to be based in part on Plaintiff's subjective complaints. The ALJ properly took into consideration Plaintiff's conservative treatment as additional evidence supporting his determination. *See Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008). Regarding subjective complaints, the Second Circuit has held that a doctor's reliance on subjective complaints does not necessarily undermine his opinion of the claimant's functional limitations. *See Green-Younger v. Barnhart*, 335 F.3d 99 (2nd Cir. 2003). However, as with Plaintiff's conservative course of treatment, the ALJ supported his rationale for affording Dr. Zogby's opinion little weight because it appeared, in part, to be based on Plaintiff's subjective complaints. The ALJ did not reject Dr. Zogby's opinion on these grounds alone, instead the ALJ took into consideration Plaintiff's conservative treatment and Dr. Zogby's apparent reliance on Plaintiff's subjective complaints in addition to the objective medical evidence which failed to support Dr. Zogby's conclusion. The ALJ's determination would have been supported by substantial evidence even if he hadn't taken into consideration these factors, given that Dr. Zogby's limitations were contradicted by other medical evidence in the record.

Plaintiff also alleges the ALJ failed to properly evaluate the opinion of Joanne Lomber, N.P. (Dkt. No. 9 at 16 [Pl.'s Mem. of Law].) Essentially, Plaintiff argues the ALJ failed to apply the factors outlined in 20 C.F.R. § 404.1527(c)(2)-(6). (*Id.*) However, it is apparent from the ALJ's decision that he applied these factors. The ALJ afforded Nurse Lomber's opinion "little weight," reasoning that she was not an acceptable medical source, her opinions were inconsistent with the objective evidence in the record, and her opinions were inconsistent with Plaintiff's course of treatment. (T. 36.) Therefore, contrary to Plaintiff's contention, the ALJ properly utilized the Regulations in his evaluation of Nurse Lomber's opinion and remand is not required.

  **B.**  **Whether the ALJ Properly Evaluated Plaintiff's Credibility.**

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 10 at 15-19 [Def.'s Mem. of Law].) The Court adds the following analysis.

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (*quoting Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (*citing Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

Plaintiff essentially argues that the ALJ mischaracterized her testimony regarding her receipt of Worker's Compensation benefits, activities of daily living, and conservative treatment. (Dkt. No. 9 at 19 [Pl.'s Mem. of Law].) However, the ALJ's characterization of Plaintiff's testimony was fair and accurate, and in making his credibility determination the ALJ properly relied on the inconsistencies within Plaintiff's testimony.

In his credibility determination the ALJ relied on inconsistencies in Plaintiff's testimony, specifically regarding her receipt of Worker's Compensation, her activities of daily living, and her work history. In accordance with the Regulations, "[an ALJ] will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a plaintiff's] statements and the rest of the evidence." 20 C.F.R. § 416.929(c)(4). Therefore, the ALJ did not err in his reliance on inconsistencies in Plaintiff's testimony in determining Plaintiff's credibility because the Regulations allow for an ALJ to consider such inconsistencies in his analysis. Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (*citing Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

Regarding Plaintiff's conservative course of treatment, a plaintiff may be found disabled even where she follows a conservative course of treatment. *See Shaw,* 221 F.3d at 134. However, in making a credibility determination, an ALJ may take into consideration "any measures taken by the [plaintiff] to relieve symptoms." 20 C.F.R. § 404.1529(c)(3)(vi). Further, Plaintiff's course of treatment was only one factor the ALJ considered in the whole of his credibility determination.

Plaintiff also argues the ALJ erred in finding that the objective medical evidence didn't support her allegations and that the ALJ instead relied on his own interpretation of the medical evidence. (Dkt. No. 9 at 20 [Pl.'s Mem. of Law].) First, in making a credibility determination an ALJ must look to the objective medical evidence. *Rockwood*, 614 at

13

270. Here, the ALJ conducted a thorough review of the objective medical evidence in the record. Plaintiff makes a sweeping allegation that the ALJ substituted his own lay opinion for the evidence in the record; however, she provides no examples of where this was done. There is no indication from a reading of the ALJ's decision that he improperly substituted his own lay opinion for that of a medical source. For example, in his discussion of Plaintiff's objective medical imaging, the ALJ outlined a treating medical source's interpretation of the images. (T. 34.) Therefore, the ALJ properly evaluated Plaintiff's credibility in light of the objective medical opinions in the record and he did not substitute his own lay opinion for that of a medical source.

The ALJ's credibility analysis properly applied the factors in the Regulations. His credibility decision was supported by substantial evidence, because the evidence he relied on was enough that "a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004). For the reasons stated herein, the ALJ conducted a proper credibility analysis and remand is not required.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: September 15, 2015
Syracuse, NY

_____
Hon. Glenn T. Suddaby
Chief, U.S. District Judge